(December 28, 1921.)

## E. E. RAIDE, Respondent, v. DAVID H. DOLLAR, Appellant.

[203 Pac. 469.]

EVIDENCE — OPINION TESTIMONY — ADMISSIBILITY OF — REAL PROPERTY —DAMAGES—TEMPORARY INJURY—INSTRUCTIONS—WHOLE CHARGE TO BE READ AND CONSIDERED TOGETHER — RIVER — HIGH-WATER MARK.

1. Evidence examined and *held* sufficient to support the verdict and judgment.

2. Error cannot be predicated upon the admission of testimony of witnesses as to what in their opinion it would cost to place certain land back in the same condition that it was before logs were dragged over it, where such witnesses testified as to the nature and extent of the injury.

3. In an action for damages for temporary injury to real property, the owner is entitled to recover the amount necessary to repair such injury and to place the land back in the same condition it was immediately prior to the injury.

4. All of the instructions given in a case must be read and considered together, and where, taken as a whole, they correctly state the law and are not inconsistent, but may be reasonably

---

Publisher's Note.

2. Admissibility of opinion of witness as to amount of damages to realty, see notes in 3 Ann. Cas. 667; Ann. Cas. 1912A, 191.

3. On cost of restoration as measure of damages for injury to real property, see note in 17 L. R. A. 426.

and fairly harmonized, it will be assumed that the jury gave due consideration to the whole charge, and was not misled by any isolated portion thereof.

5. The high-water mark of a river, not subject to tide, is the line which the river impresses on the soil by covering it for sufficient periods to deprive it of vegetation and to destroy its value for agriculture.

6. *Held*, that the record contains no evidence tending to show that the land claimed by respondent is below the high-water mark of the north fork of the Coeur d'Alene River.

APPEAL from the District Court of the First Judicial District, for Shoshone County. Hon. William W. Woods, Judge.

Action for damages to real property. Judgment for plaintiff. *Affirmed.*

Robert H. Elder and C. D. Randall, for Appellant.

The court committed prejudicial error in not requiring witnesses to qualify before receiving their testimony. (Jones on Evidence, sec. 363, p. 456.)

"If the land is temporarily but not permanently injured, the owner is entitled to recover the amount necessary to repair the injury and put the land in the condition it was at the time immediately preceding the injury, with legal interest thereon to the time of the trial." (*Boise Valley Const. Co. v. Kroeger,* 17 Ida. 384, 105 Pac. 1070, 28 L. R. A., N. S., 968; *Young v. Extension Ditch Co.,* 13 Ida. 174, 89 Pac. 296.)

"On navigable streams riparian rights do not extend beyond the high-water mark." (*Northern Pac. Ry. Co. v. Hirzel,* 29 Ida. 438, 161 Pac. 854.)

"The title of the state extends not only to the land underlying that part of a navigable stream or body of water over which navigation may be conducted, but extends to the entire bed, and in particular to the land which is covered and uncovered by the ordinary rise and fall of the tide, stream or lake." (*Churchill Co. v. Kingsbury,* 178 Cal. 554, 174

Pac. 329; *Barney v. Keokuk,* 94 U. S. 324, 24 L. ed. 224; *McManus v. Carmichael,* 3 Iowa, 1.)

The defendant had the right to use the channel of the north fork of the Coeur d'Alene River at all stages of the water (*Idaho Northern Ry. Co. v. Post Falls Lbr. Co.,* 20 Ida. 695, 119 Pac. 1098, 38 L. R. A., N. S., 114; *Mashburn v. St. Joe Improvement Co.,* 19 Ida. 30, 113 Pac. 92, 35 L. R. A., N. S., 824), and it has been held that such use, even when the water is above the line of mean high water, would not be a use of the adjoining land. (*Lownsdale v. Grays Harbor Boom Co.,* 36 Wash. 198, 78 Pac. 904.)

McFarland & McFarland, for Respondent.

Where one instruction is ambiguous or incomplete, but taken with all the instructions correctly states the law, the decision of the lower court will not be reversed on account of such incomplete or ambiguous instruction. (*Brayman v. Russell & Pugh Lumber Co.,* 31 Ida. 140, 169 Pac. 932.)

BUDGE, J.—In respondent's complaint there are two causes of action alleged. In the second cause of action respondent sought to recover damages sustained by reason of the destruction of his dwelling-house and personal property situated therein and permanent injury to the land described in the first cause of action. The injuries complained of and sustained by respondent in his second cause of action were found upon the trial by the court to have been due to the act of God, and not to negligence or fault upon the part of appellant, but to an extraordinary flood which occurred on or about the thirtieth day of December, 1917, in the north fork of the Coeur d'Alene River, adjacent to which stream respondent's land is situated, the waters having suddenly risen to an unprecedented height, causing logs belonging to appellant in large numbers which were upon rollways along the bank of the river to be precipitated into the stream and carried down with large quantities of other logs belonging to other parties, as well as stumps and debris, on to the lands of the respondent.

In his first cause of action respondent alleged, *inter alia,* that about four and a half months after said logs had been permitted to lodge and jam upon and against his said lands and premises, appellant negligently and wrongfully and without the consent of and contrary to respondent's wishes, with force and violence entered upon respondent's lands and premises and particularly upon his meadow, with teams of horses, logging trucks and devices, and proceeded to remove the logs of appellant from the premises, and in so doing cut up and injured his meadow lands, causing numerous and divers roads and roadways to be made, on, over and across the same, to his damage in the sum of $500, and negligently and wilfully cut down and destroyed two apple trees of the value of $25 each, whereby respondent was further damaged in the sum of $50.

Appellant entered a general and special denial to the foregoing allegations contained in respondent's first cause of action.

Judgment was entered upon the verdict of the jury in favor of the respondent, assessing his damages in the sum of $500, from which judgment and an order denying a motion for a new trial, this appeal is prosecuted.

Appellant assigns as error the insufficiency of the evidence to support the verdict or judgment; the action of the court in giving and in refusing to give certain instructions; that the verdict is excessive and was rendered under the influence of passion and prejudice; and that the court erred in overruling defendant's motion for a new trial.

The latter error assigned is not discussed in appellant's brief, and will not be considered upon this appeal.

In order to pass upon the question of the sufficiency of the evidence, it becomes necessary to review briefly some of the testimony offered during the trial. It is admitted that respondent was the owner in fee, in the possession and entitled to the possession of the premises described in his complaint. It was also established beyond dispute that appellant went upon the premises and particularly the meadow

land of respondent and removed therefrom by the use of teams, trucks and other devices, a large number of logs that had been deposited upon the meadow lands as a result of the flood, and that the same were dragged for some distance over the meadow lands to the bank of the river and dumped into the stream for the purpose of being floated down to the mills. It is insisted by appellant that there is no competent evidence to support the verdict or judgment, and that no injury was done to the meadow lands by reason of the removal of the logs.

Respondent testified that in moving the logs, ditches were plowed into the meadow. Witness Neurmi for respondent testified that some of these ditches were over a foot deep. Witness Wilson corroborated the testimony of respondent and the former witness as to the condition in which the meadow was left after the logs had been dragged over and across it.

The witness Neurmi testified that he saw the meadow before and after the logs had been pulled off it. He further testified that he had known the meadow since 1916, that he had lived in that locality, that he owned land adjoining, that he had experience in farming, that he knew the character and kind of land owned by the respondent. Thereupon the following question was propounded to the witness, to which counsel for appellant objected upon the ground and for the reason that the witness had not shown himself qualified to answer the question: "Do you know what the reasonable cost would be of putting that land in the same condition as it was before any of those logs were hauled away on account of the scratching and the roadways you have testified to?" to which question the witness made answer that he knew, and was thereupon asked, "How much would be a reasonable cost for putting the land in the same condition as it was before any of the logs were hauled away?" His answer was, "Between five and six hundred dollars anyhow."

The witness Wilson testified that he had lived on the north fork of the Coeur d'Alene River for twelve years; that he had worked in the woods and had farmed; that he helped to remove the logs from respondent's place; that it took three or four days with about seven men and three teams of horses; that after removing the logs the land looked very bad on account of the logs plowing up the meadow; that some of the places made by the logs were a foot deep. Thereupon counsel for respondent asked the witness the following question: "Do you know what the reasonable cost would be for filling up these ditches and roads caused by the dragging of those logs, and putting the land in the same condition it was before the logs were dragged off of it?" to which he made answer that he did, and he was thereupon asked how much, whereupon counsel for appellant objected to the witness answering the question upon the ground that he had not shown himself qualified. The objection was overruled, and the witness answered that it would cost never under five or six hundred dollars.

The court did not err in overruling the objections and permitting the witnesses to answer. Their testimony disclosed the nature and extent of the injury done to the meadow by removing the logs. It was for the jury to fix the damages. The fact that the witnesses testified as to what in their opinion it would cost to place the land back in the same condition that it was before the logs were dragged over the meadow was not prejudicial to appellant, in view of the fact that the witnesses had testified to the actual conditions in which the meadow was left as a result of the dragging of the logs over it.

In actions of this nature the principle of actual compensation governs and the damages awarded must be confined to the actual damages sustained. We think the damages proven in this case were supported by sufficient competent evidence to support the verdict. The meadow was not permanently injured as a result of dragging the logs over it, but it was a temporary injury and the owner would be en-

titled to recover the amount necessary to repair the injury and put the land in the condition it was in at the time immediately preceding the injury. Whether it was necessary to replow and resow the meadow, or to fill in the ditches made as a result of dragging the logs through the meadow, was for the jury to determine. Appellant was entitled to recover a verdict sufficient in amount to repair the injury done or to place the land in the same condition that it was immediately prior to the injury sustained, and such additional damage if any that may have resulted by reason of appellant's failure to remove the logs from the meadow.

Appellant insists that the court erred in giving instruction No. 3A, which reads as follows: "And you are further instructed that if from the preponderance of the evidence you believe that defendant did so enter plaintiff's land without his consent and contrary to his wishes with said teams and logging devices and did therewith drive and drag logs over plaintiff's lands and premises and his said meadow, whereby said lands and premises and meadow were cut up and injured and roads and roadways caused thereon by defendant in driving and dragging logs over said lands, premises and meadow, by reason of which plaintiff's said lands, premises and meadow were injured and damaged, you should find in favor of plaintiff and assess his damages against defendant in such sum as it would necessarily cost to repair such injury, if any has been proven."

It is insisted that the foregoing instruction is indefinite and uncertain because it does not limit the liability of appellant to such repairs as are necessary to put the land of respondent in the condition it was at the time immediately preceding the injury, but leaves it open to the jury to find the total amount of damages done to respondent's land, not only in removing the logs but also the damages caused by the flood, and said instruction does not state the law. There is no merit in this contention. In instructions No. 1A and 2A, the court limits respondent's right to recover to the injury sustained by the wrongful entry of

appellant upon respondent's premises, and expressly admonishes the jury that they should find in favor of respondent and assess his damages against appellant in such sum as it would necessarily cost to repair such injury, if any had been proven.

All of the instructions given in a case must be read and considered together, and where taken as a whole they correctly state the law and are not inconsistent, but may be reasonably and fairly harmonized, it will be assumed that the jury gave due consideration to the whole charge, and was not misled by any isolated portion thereof. (*Brayman v. Russell & Pugh Lumber Co.*, 31 Ida. 140, 169 Pac. 932.)

It is next contended that the court erred in refusing to give instruction No. 6, which is as follows: "You are instructed that the title to the bed of the north fork of the Coeur d'Alene River below the ordinary, or natural high-water mark, is vested in the state of Idaho, for the use and benefit of all the people; that therefore, if you find from a preponderance of the evidence in this case that the logs of the defendant were deposited on land which is below the ordinary or natural high-water mark, the plaintiff cannot recover, and your verdict will be for the defendant."

The high-water mark of a river, not subject to tide, is the line which the river impresses on the soil by covering it for sufficient periods to deprive it of vegetation and to destroy its value for agriculture. (*State ex rel. Citizens' Electric Lighting & Power Co. v. Longfellow*, 169 Mo. 109, 69 S. W. 374.)

In this connection it is urged that the land upon which these logs were cast was below the high-water mark of the river at that point, and that the title to the land was in the state for the use of the public. The evidence, however, fails to justify any such conclusion, but shows, on the contrary, that the land was under cultivation, that hay, grain and vegetables were raised thereon, and that some twenty-five bearing fruit trees were then growing upon the land.

While the evidence discloses that portions of this land were occasionally overflowed during spring freshets, yet appellant's position that the land was below the high-water mark is untenable, in view of the finding of the court that the logs were cast upon the land by an unusual and extraordinary flood. By the term "high-water mark" is meant those points along the shore where water rises to such a height as may reasonably be anticipated, but does not include such extraordinary freshets as cannot be anticipated. (*Erdman v. Watab Rapids Power Co.*, 112 Minn. 175, 127 N. W. 487, 128 N. W. 454.)

The court did not err in refusing to give the instruction requested.

There is no evidence in the record that would justify this court in reaching the conclusion that the verdict is excessive by reason of bias or prejudice. Neither do we think that the jury was confused in assessing respondent's damages by reason of the flood and such damages as resulted by the removal of the logs.

Finding no reversible error, the judgment must be affirmed, and it is so ordered. Costs are awarded to respondent.

Rice, C. J., and Dunn and Lee, JJ., concur.

McCarthy, J., dissents.