**Michael PALMER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–2236.**

Court of Appeals of Alaska.

March 17, 1989.

Larry Cohn, Anchorage, for appellant.

---

Nancy R. Simel, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Michael Palmer was convicted by a jury of assault in the first degree, in violation of AS 11.41.200(a)(1) (recklessly causing serious physical injury to another by means of a dangerous instrument). Palmer appeals, contending that the trial court erred in refusing to instruct the jury on his proposed defense; specifically, the justified use of force to terminate a burglary occurring in occupied premises. AS 11.81.-350(c)(2). Palmer also appeals his sentence as excessive. We affirm.

On December 31, 1986, Michael Palmer, Michael Evans, and Dick Boskofsky were living in Erdman's Trailer Park in Kodiak. Evans and Boskofsky lived in the trailer next door to Palmer's trailer. Palmer and Evans had known each other for a number of years and were generally friends. On the day in question, Palmer and his girlfriend, Peggy Sue Cupp, had had a disagreement and Palmer went to Boskofsky's trailer looking for Cupp. It appears that Boskofsky became angry because Palmer was making noise outside of his trailer. Boskofsky ordered Palmer to leave the premises and apparently struck Palmer at least once. Thereafter, Palmer returned to Boskofsky's and Evans' trailer to speak to Cupp. Palmer pounded on the door and window of the trailer in an attempt to gain admission. Boskofsky again told Palmer to go away.

A few moments later, Boskofsky followed Palmer to Palmer's trailer. A short time after Boskofsky left, Evans also walked over to Palmer's trailer. It appears that Boskofsky and Evans went to Palmer's residence uninvited, but there was no evidence that Palmer specifically ordered either man to leave. Evans testified that when he arrived, Boskofsky and Palmer were arguing. According to Evans, Boskofsky was shaking Palmer and may have been "backhanding" him. Evans listened to the argument between Palmer and Boskofsky, but did not participate. After a few minutes, the argument ended and Boskofsky turned to leave. Evans made some comments to Palmer and then began to follow Boskofsky out the door. As Boskofsky was walking out the door, he heard the sound of metal scraping on metal. He turned around and saw Palmer stabbing Evans with a large knife. It appears that Palmer stabbed Evans three times on his left side. One wound was in the shoulder area, another was in the lower torso area, and the third was in the hip area. Evans was bleeding badly. Boskofsky assisted him back to their trailer and then called the police.

It appears to be undisputed that Palmer's stabbing of Evans constituted the use of deadly force. Palmer requested an instruction informing the jury that a person may use "deadly force upon another when and to the extent the person reasonably believes it is necessary to terminate what the person reasonably believes to be a burglary in any degree occurring in an occupied dwelling or building." *See* AS 11.81.-350(c)(2). Palmer pointed out that the assault in this case occurred in an occupied dwelling, namely, his trailer. Palmer reasoned that the jury could have found that Evans and Boskofsky committed burglary because they remained unlawfully in the trailer with the intent to commit a crime, *i.e.*, a fourth-degree assault. In Palmer's view, the jury could have concluded that Evans and Boskofsky were acting in concert. Thus, according to Palmer, the jury could have concluded that Palmer reasonably believed that stabbing Evans was necessary to terminate the alleged burglary. Palmer does not dispute that he never ordered Evans or Boskofsky to leave his trailer, but he argues that, in the absence of an express invitation, Boskofsky and Evans should have known that they were not welcome in Palmer's trailer at the time.

Palmer recognizes that the trial court instructed the jury on the use of deadly force in self-defense. AS 11.81.335. Palm-

er seems to argue, however, that prevention of a burglary and use of deadly force in self-defense are distinguishable by a very important element. Use of deadly force in self-defense requires that the person reasonably believes the use of deadly force is necessary to defend against death or serious physical injury. *See* AS 11.81.335(a)(2). In contrast, deadly force may be used to prevent a burglary in any degree occurring in an occupied dwelling or building. AS 11.81.350(c)(2). Palmer argues that the jury could have reasonably believed that his use of deadly force was necessary to prevent an assault by Evans and Boskofsky, even though Palmer knew the assault would not likely result in Palmer's death or serious physical injury. Under these circumstances, Palmer argues that his use of deadly force would be authorized under AS 11.81.350, but not under AS 11.81.335.

■ While Palmer has presented a novel argument, we are satisfied that the trial court did not abuse its discretion in refusing to give the instruction in question. A jury question is presented and an instruction is required on a defense theory if the evidence, viewed in the light most favorable to the accused, might arguably lead a juror to entertain a reasonable doubt as to the defendant's guilt. *See Paul v. State*, 655 P.2d 772, 775 (Alaska App.1982). However, there must at least be some evidence supporting each element of the defense. *See Folger v. State*, 648 P.2d 111, 113 (Alaska App.1982). We agree with the trial court that there was insufficient evidence to support an inference that Palmer reasonably believed it was necessary to stab Evans in order to terminate a burglary by Evans in Palmer's trailer. We note that Palmer did not testify. He therefore must base his argument on inferences from the testimony of other witnesses. There was some evidence that Evans may have

been facing Palmer and that the two may have been struggling with each other at the time the stab wounds were inflicted. However, there was no evidence that Palmer directed Evans to leave the premises, that Evans threatened Palmer, or that Evans attempted to injure Palmer. Further, there was no evidence that Palmer believed it was necessary to stab Evans to get Evans to leave the premises.[1]

■ Palmer next argues that his sentence is excessive. Palmer was initially sentenced on the theory that he was subject to a seven-year presumptive term. AS 12.55.125(c)(2). The trial court found in mitigation that the offense was committed while Palmer was under some degree of duress, coercion, threat, or compulsion insufficient to constitute a complete defense, but which significantly affected Palmer's conduct. *See* AS 12.55.155(d)(3). The court therefore suspended two years of the seven-year presumptive term. Thereafter, this court published an opinion in *Pruett v. State*, 742 P.2d 257, 262–63 (Alaska App. 1987), holding that a five-year, rather than a seven-year, presumptive term applies to one who recklessly causes serious physical injury to another by means of a dangerous instrument. Palmer sought resentencing pursuant to Criminal Rule 35(a). The trial court issued an amended judgment sentencing Palmer to a presumptive term of five years. Palmer moved for reconsideration, arguing that the trial court had failed to address the criteria established in *State v. Chaney*, 477 P.2d 441 (Alaska 1970). He further argued that the court had failed to explain why the original seven-year presumptive term was reduced to five years, but the resulting five-year presumptive term was not reduced at all, despite the finding of a mitigating factor. *See, e.g., Juneby v. State*, 641 P.2d 823 (Alaska App. 1982), *modified on other grounds*, 665 P.2d 30 (Alaska App.1983). The trial court

---

1. In his arguments in the trial court, Palmer erroneously argued that a person commits a burglary any time the person is in an inhabited building and assaults the occupant, reasoning that under such circumstances the person is "remaining unlawfully." We rejected a similar contention in *Arabie v. State*, 699 P.2d 890, 894–95 (Alaska App.1985). In that case, we held that in order to commit a burglary by "remaining unlawfully," the state must show that the perpetrator had the intent to commit an additional crime at the time his or her license or privilege to be on the premises terminated, *i.e.*, at the moment his or her presence became a trespass. We declined to expand the meaning of "remaining unlawfully" beyond such situations. *See Shetters v. State*, 751 P.2d 31, 36 n. 2 (Alaska App.1988).

then issued a written decision, indicating that it felt a five-year sentence was appropriate, but that a seven-year sentence was not, in light of the totality of the circumstances, including the mitigating factor. The court noted that Palmer had a misdemeanor record for assaultive behavior and had a serious alcohol problem which he had failed to correct despite past opportunities.

■ The existence of a mitigating factor does not automatically call for reduction of the presumptive term. *Smith v. State*, 711 P.2d 561, 567, 572 n. 8 (Alaska App.1985); *Staael v. State*, 697 P.2d 1050, 1058 (Alaska App.1985), *aff'd*, 718 P.2d 948 (Alaska 1986); *Juneby*, 665 P.2d at 32; *Linn v. State*, 658 P.2d 150, 153 (Alaska App.1983). On the other hand, the trial court has the duty to avoid the appearance of vindictiveness. If a defendant successfully appeals a mitigated sentence on the ground of legal error, and the trial court, on remand, disregards the mitigating factor and reimposes the same sentence, there is a risk that the court's action will be perceived as punishing the defendant for successfully appealing. In this case, however, the error in imposing a seven-year presumptive term was made clear by an intervening case which neither the parties nor the court could have reasonably anticipated. There is no appearance of vindictiveness in this case. We have carefully considered the defendant's criminal record, the circumstances of this offense, and the trial court's remarks. We conclude that the sentence imposed was not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The judgment and sentence of the superior court are AFFIRMED.[2]

---

**2.** Palmer also argues that the trial court was clearly erroneous in finding that this offense was, in part, the result of Palmer's drinking. We find no clear error. There was some evidence that Palmer had been drinking during the hours preceding the assault, and it is clear that he has a substantial record of alcohol-related offenses. Under the circumstances, it was not unreasonable for the trial court to infer that drinking played some part in the instant offense, even though there was no evidence that Palmer was intoxicated at the time he stabbed Evans. Under the circumstances, it was not error for the trial court to conclude that alcohol treatment was relevant to Palmer's rehabilitation.