37 P.3d 625

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Daniel Lee EBY, Defendant–Appellant.**

No. 25325.

Court of Appeals of Idaho.

April 17, 2001.

Rehearing Denied May 16, 2001.

John M. Adams, Chief Kootenai County Public Defender; J. Bradford Chapman, Deputy Public Defender, Coeur d'Alene, for appellant. J. Bradford Chapman argued.

Hon. Alan G. Lance, Attorney General; Alison A. Stieglitz, Deputy Attorney General, Boise, for respondent. Alison A. Stieglitz argued.

LANSING, Judge.

Following a jury trial, Daniel Eby was convicted of first degree murder, conspiracy to commit robbery, and attempted robbery. On appeal, Eby asserts that the district court erred by refusing to suppress Eby's incriminating statements made to police, admitting hearsay evidence at trial, and refusing to give a jury instruction requested by Eby. He also contends that his attempted robbery conviction should be vacated because it merges into the first degree murder conviction.

## FACTS AND PROCEDURAL HISTORY

According to the State's evidence, the victim, Mel Evenson, was murdered late in the night of March 25 or early the next morning. On that night, Daniel Eby, Jeremy Schmitz, Cliff Hicks and Evenson were working on cars in a garage belonging to Gerald Smith. Inside the adjacent residence were Smith and several other individuals. While in the garage, Evenson was repeatedly struck in the head with a baseball bat and with a large wrench. His clothing was removed and was then burned in a wood stove in the garage. Evenson's body was wrapped in a tarp and placed in the bed of his own truck. The body was then covered with flattened cardboard boxes, and the truck was abandoned in the countryside.

Approximately one month later, law enforcement officers found Evenson's body. An autopsy revealed that he had died of multiple cranial cerebral injuries due to blunt force impacts to his head. Further investigation led law enforcement officers to the garage where they discovered blood on the wood stove and on a motorcycle. Persons who had been present at Gerald Smith's residence on the night of Evenson's death were questioned by police. Ultimately, Eby was charged with first degree murder, conspiracy to commit robbery and attempted robbery. It was the prosecution's theory that, on the evening in question, Eby, Schmitz and Hicks believed that Evenson was carrying a substantial amount of narcotics and cash because he had just returned from an out-of-town drug transaction, and the three decided to kill Evenson in order to steal his money and drugs. A jury found Eby guilty of all of the charges. The district court imposed a unified life sentence with a twenty-five-year minimum term of imprisonment for first degree murder, and determinate fifteen-year sentences for attempted robbery and conspiracy to commit robbery, with the sentences to be served concurrently.

On appeal, Eby raises four issues. He argues that the district court erred in (1) denying the motion to suppress Eby's incriminating statements made when detectives continued to interrogate Eby after he indicated that he had an attorney; (2) allowing a detective to testify about Schmitz's confession which implicated Eby in the crimes; (3) refusing Eby's request for a jury instruction on a threats and menaces defense; and (4) entering a conviction for attempted robbery which, Eby argues, must be merged into the first degree murder conviction.

## ANALYSIS

### A. Denial of Motion to Suppress Eby's Statements

■ Before Eby was arrested or charged in this case, he was twice questioned by law enforcement officers about the Evenson murder. Both times, Eby voluntarily went to the police station for an interview at an officer's request. Before the questioning, officers advised Eby of his right to remain silent and his right to counsel, as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Eby signed a waiver of these rights. During the first interview, while the officers were explaining their investigation and theory of the case, Eby stated, "I've got an attorney." The officers did not ask Eby to clarify this statement, but continued with their explanation. Later, during questioning, Eby made incriminating statements about his involvement in the murder. During the second interview, Eby made similar statements. After each interview, he was allowed to leave the police station. Sometime later, Eby was arrested. He filed a motion to suppress his self-incriminating statements, asserting that his comment, "I've got an attorney," was an invocation of his right to have counsel present during the questioning. The district court denied the motion, holding that Eby was not in custody when the statements were made and therefore *Miranda* rights did not attach. On appeal, Eby asserts that the trial court erred in denying his suppression motion.

■ Under *Miranda* and its progeny, when a person who is being subjected to custodial interrogation states that he wants an attorney, the interrogation must cease until an attorney is present or the suspect himself reinitiates the conversation. *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Miranda*,

384 U.S. at 474, 86 S.Ct. 1602, 16 L.Ed.2d 694. We conclude that Eby's suppression motion was properly denied for two reasons. First, Eby has not shown error in the district court's determination that he was not "in custody" when he voluntarily submitted to police questioning.

 Second, regardless of whether Eby was "in custody" for *Miranda* purposes, his oblique reference to his attorney was not an invocation of the right to counsel that obligated the officers to terminate their interrogation. The *Miranda* restraint on police questioning does not arise unless the request for counsel is clear and unambiguous. In *Davis v. United States,* 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), the Supreme Court explained:

> [I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning.
>
> . . . .
>
> Rather, the suspect must unambiguously request counsel. As we have observed, "a statement either is such an assertion of the right to counsel or it is not." Although a suspect need not "speak with the discrimination of an Oxford don," he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, *Edwards [v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)] does not require that the officers stop questioning the suspect.

*Id.* at 458, 114 S.Ct. at 2355 (emphasis in original) (citations omitted).

 In his appellate argument, Eby relies upon this Court's pre-*Davis* decision in *State v. Moulds,* 105 Idaho 880, 673 P.2d 1074 (Ct.App.1983), where we held that when a suspect makes an equivocal request for counsel, police must suspend questioning other than to clarify the request, and that interrogation may resume only if the suspect clarifies that he does not want counsel or the suspect himself reinitiates the dialogue with police. *Id.* at 888, 673 P.2d at 1082. Eby's argument fails to recognize that our *Moulds* decision was effectively overruled by *Davis,* which rejected any requirement that law enforcement officers presented with an ambiguous request for counsel must stop to ask clarifying questions. The *Davis* decision states:

> Of course, when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney.... Clarifying questions help protect the rights of the suspect by ensuring that he gets an attorney if he wants one, and will minimize the chance of a confession being suppressed due to subsequent judicial second-guessing as to the meaning of the suspect's statement regarding counsel. But we decline to adopt a rule requiring officers to ask clarifying questions. If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him.

*Id.* at 460, 114 S.Ct. at 2356.

Eby's statement, "I've got an attorney," was not an unambiguous request for counsel. Therefore, even if Eby had been in custody, the detectives were not precluded from continuing the interrogation. The district court's denial of Eby's motion to suppress the statements is affirmed.

**B. Admission of Accomplice's Hearsay Statements**

 Before Eby's case went to trial, Schmitz and Hicks also had been arrested for the murder. Schmitz ultimately confessed and pleaded guilty to second degree murder. In his confession, Schmitz said that Eby had initially beaten Evenson with a baseball bat and that Schmitz then hit Evenson with the bat as well. At Eby's trial, Schmitz was called as a witness for the State, but he refused to testify despite an order from the trial court directing him to do so. The State then sought to introduce the substance of Schmitz's confession through the testimony of a detective who had interviewed him.

**538**

Over Eby's objection, the court allowed this hearsay testimony on the basis that Schmitz's confession fell within the hearsay exception for statements against interest under Idaho Rule of Evidence 804(b)(3). The district court concluded that evidence admitted under this hearsay exception did not run afoul of the Sixth Amendment's Confrontation Clause. Eby contends on appeal, as he did below, that the admission of this testimony violated his Sixth Amendment right to confront and cross-examine adverse witnesses.

■ The Sixth Amendment to the United States Constitution guarantees the accused in a criminal prosecution the right to confront adverse witnesses. "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

■ It is well established, however, that the Confrontation Clause is not offended by the introduction of hearsay statements in a criminal trial if the hearsay bears sufficient "indicia of reliability." *See Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Mancusi v. Stubbs*, 408 U.S. 204, 213, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972). The indicia of reliability requirement may be satisfied if: (1) the evidence falls within a firmly rooted hearsay exception; or (2) there is a showing of sufficient particularized guarantees of trustworthiness such that the opportunity for cross-examination of the declarant would be expected to add little, if anything, to the statement's reliability. *Roberts, supra.* Thus, at the time of Eby's trial, the issue was whether Schmitz's statements implicating Eby fell within either of these categories. Subsequently, however, the United States Supreme Court issued its decision in *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999), in which the Court addressed the Confrontation Clause's restraint upon the use of hearsay evidence of an accomplice's confession that shifts some of the blame to the defendant. In *Lilly*, the Court held that the "non-self-inculpatory" portion of an accomplice's confession implicating a criminal defendant is not a firmly rooted hearsay exception:

It is clear that our cases consistently have viewed an accomplice's statements that shift or spread the blame to a criminal defendant as falling outside the realm of those "hearsay exception[s] [that are] so trustworthy that adversarial testing can be expected to add little to [the statements'] reliability." ... The decisive fact, which we make explicit today, is that accomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence.

*Id.* at 133–34, 119 S.Ct. at 1898–99.

With respect to the second alternative means of gaining admission of such out-of-court declarations—a showing of particularized guarantees of trustworthiness—the *Lilly* decision noted that there is a presumption of unreliability in an accomplice's blame-shifting statements: "[W]e have over the years 'spoken with one voice in declaring presumptively unreliable accomplices' confessions that incriminate defendants.'" *Id.* at 131, 119 S.Ct. at 1897 (quoting *Lee v. Illinois*, 476 U.S. 530, 541, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986)). Although this presumption of unreliability is rebuttable and must be examined on a case-by-case basis, the Supreme Court further observed, "It is highly unlikely that the presumptive unreliability that attaches to accomplices' confessions that shift or spread blame can be effectively rebutted when ... the government is involved in the statements' production, and when the statements describe past events and have not been subjected to adversarial testing." *Id.* at 137, 119 S.Ct. at 1900. The Court noted that the inclusion of broadly self-inculpatory components in a confession "does not make more credible the confession's non-self-inculpatory parts.... The police need not tell a person who is in custody that his statements may gain him leniency in order for the suspect to surmise that speaking up, and particularly placing blame on his cohorts, may inure to his advantage." *Id.*, 527 U.S. at 139, 119 S.Ct. at 1901.

In the appeal before us, the State concedes that, in light of the *Lilly* decision, Eby's constitutional right of confrontation was violated by the admission of hearsay evidence of Schmitz's confession, which directed blame toward Eby. The State contends, however, that this trial error was harmless. The State points out that the information charging Eby with murder alleged that the killing of Evenson was murder in the first degree because it was a deliberate and premeditated killing, I.C. § 18–4003(a), or alternatively, because it was a felony murder committed in the perpetration or attempted perpetration of a robbery, I.C. § 18–4003(d), and the jury was instructed on both of these theories of first degree murder. Any murder committed during the perpetration of certain felonies, including attempted robbery, is murder in the first degree under § 18–4003(d). Any participant in the predicate felony can be held accountable for first degree murder for any death that occurred during the commission of the felony, regardless of whether that individual directly participated in the killing or expected or intended a death to occur. *State v. Pratt,* 125 Idaho 546, 558, 873 P.2d 800, 812 (1993); *State v. Windsor,* 110 Idaho 410, 419, 716 P.2d 1182, 1191 (1985); *State v. Carlson,* 134 Idaho 389, 401, 3 P.3d 67, 79 (Ct.App.2000); *State v. Cambron,* 118 Idaho 624, 626, 798 P.2d 469, 471 (Ct.App.1990). The State submits that, without reference to the Schmitz confession, there was overwhelming evidence implicating Eby in the underlying attempted robbery, and therefore it is clear beyond a reasonable doubt that the jury would have found Eby guilty on the felony murder theory even if Schmitz's confession had been excluded.

The State's argument is well taken. When a criminal trial has been tainted by the erroneous admission of evidence, a conviction will nonetheless be affirmed if the appellate court concludes, beyond a reasonable doubt, that there is no reasonable possibility that the error contributed to the conviction. *State v. Cross,* 132 Idaho 667, 670, 978 P.2d 227, 230 (1999); *State v. Roy,* 127 Idaho 228, 231, 899 P.2d 441, 444 (1995); *State v. Hawkins,* 131 Idaho 396, 407, 958 P.2d 22, 33 (Ct.App.1998). The properly admitted evidence at Eby's trial overwhelmingly proves that he participated in the attempted robbery that culminated in the murder of Evenson. Gerald Smith, the owner of the property where the crimes occurred, testified that on the night in question Eby told him, "We are going to mug Mel," and that Eby, Hicks and Schmitz were going to do this to obtain Evenson's drugs and money. Smith also testified that Eby induced persons in the residence to leave on the night of the murder by telling them to go to the store to buy food and cigarettes. Eby's own statements to detectives, which were admitted at trial, indicate that he stood guard while Hicks and Schmitz beat Evenson to death with a baseball bat and a large pipe wrench, removed the clothes from the body, searched the clothing for drugs and money, and concealed the body in the back of Evenson's truck. We are persuaded beyond a reasonable doubt that, on the basis of this testimony, the jury would have found that Eby participated in the attempt to rob Evenson and therefore was guilty of felony murder even if the jury had never heard the hearsay evidence of Schmitz's confession. Therefore, the admission of Schmitz's statements implicating Eby was harmless error.

## C. Denial of Eby's Requested Instruction on a Threats and Menaces Defense.

Eby also posits error in the trial court's denial of his request for a jury instruction on the "threats and menaces" defense. According to Eby, the refusal of such an instruction prevented the jury from considering the defense theory that Eby participated in the offenses under threat from Hicks.

A defendant is entitled to have the jury instructed on a defense theory if there is a reasonable view of the evidence that would support the theory. *State v. Johns,* 112 Idaho 873, 880–81, 736 P.2d 1327, 1334–35 (1987); *State v. Kodesh,* 122 Idaho 756, 758, 838 P.2d 885, 887 (Ct.App.1992). Whether a reasonable view of the evidence supports an instruction to the jury is a question committed to the discretion of the trial court, and such a determination is reviewed

under an abuse of discretion standard. *State v. Bowers*, 131 Idaho 639, 640, 962 P.2d 1023, 1024 (1998); *State v. Howley*, 128 Idaho 874, 878, 920 P.2d 391, 395 (1996).

The instruction requested by Eby was based upon I.C. § 18–201(4), which provides:

> All persons are capable of committing crimes, except those belonging to the following classes:
>
> . . . .
>
> 4. Persons (unless the crime be punishable with death) who committed the act or made the omission charged, under threats or menaces sufficient to show that they had reasonable cause to and did believe their lives would be endangered if they refused.[1]

Eby asserts there is evidentiary support for such an instruction in testimony that Hicks killed Evenson and that Eby's involvement was limited to what Hicks told him to do. Eby claims that there was trial evidence from which the jury could have found that his life was threatened if he refused to do as instructed by Hicks. However, in our review of the record we have found no evidence that Eby was under any threat compelling him to participate in the attempted robbery or the murder. The only evidence of threats was testimony that Hicks warned Eby, both before and after the murder, that if Eby told anyone about the incident, he would suffer bodily injury. These were threats to dissuade Eby from disclosure of the crimes; there was no evidence of any threat to induce his participation in the offenses. Therefore, the trial evidence does not support the requested instruction, and the district court did not err in refusing to submit a threats and menaces instruction to the jury.

## D. Failure to Merge the Attempted Robbery Sentence into the First Degree Murder Sentence

■ Finally, Eby contends that his conviction of attempted robbery should be vacated because attempted robbery is a lesser included offense of felony murder. We agree.

In *State v. Pizzuto*, 119 Idaho 742, 756–58, 810 P.2d 680, 694–96 (1991), *overruled on other grounds, State v. Card*, 121 Idaho 425, 432, 825 P.2d 1081, 1088 (1991), the Idaho Supreme Court concluded that where robbery was the predicate felony for a felony murder, the robbery conviction merged as a lesser included offense of the felony murder conviction. Here, Eby was charged with the first degree murder of Evenson on both a felony murder theory and a premeditation theory. The jury verdict form did not distinguish between these two potential bases for his conviction of first degree murder. Moreover, we have upheld the conviction, despite the erroneous admission of an accomplice's hearsay statements, on the basis that Eby would have been found guilty of felony murder even in the absence of the erroneously admitted evidence. Therefore, Eby's first degree murder conviction must be treated as one for felony murder, predicated upon his guilt of the attempted robbery during which the homicide occurred. The State concedes, and we agree, that under these circumstances, the attempted robbery conviction must be vacated because it is for a lesser included offense that merges into the conviction for felony murder. Consequently, Eby's conviction for attempted robbery is vacated, and on remand, the district court is directed to amend the judgment of conviction accordingly.

## CONCLUSION

The district court correctly refused to suppress the statements Eby made to law enforcement officers after he made an ambiguous reference to his attorney, and the district court was also correct in declining to give a "threats and menaces" jury instruction. The district court erred in admitting hearsay evi-

---

1. Eby acknowledges that under I.C. § 18–201(4), a threats and menaces defense does not apply to first degree murder, which is punishable by death. However, Eby argues that such an exclusion should not apply here because, in order for the jury to find him guilty of felony murder, it had to first find him guilty of attempted robbery, a crime that is not excluded from I.C. § 18–201(4). We deem it unnecessary to address this issue.

dence of an accomplice's statements implicating Eby in the crimes, but we conclude that this trial error was harmless beyond a reasonable doubt. Finally, we hold that Eby's conviction for attempted robbery must be vacated because on the facts of this case, attempted robbery merges into the conviction for first degree murder. Therefore, this case is remanded to the district court for amendment of the judgment of conviction in accordance with this opinion.

Judge PERRY and Judge Pro Tem SCHILLING, concur.